UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEONARD MANCINONE, KATHLEEN MANCINONE,  *Plaintiffs*,  v.  ALLSTATE INSURANCE COMPANY, KENNETH WARNER & SONS, INC.,  *Defendants*. | No. 3:20-cv-00082 (KAD)  September 24, 2020 |

MEMORANDUM OF DECISION
RE: PLAINTIFFS' MOTION TO REMAND (ECF NO. 20)

Kari A. Dooley, United States District Judge:

Pending before the Court is Plaintiffs' motion to remand this action to the Connecticut Superior Court (ECF No. 20) and the motion of Defendant Kenneth Warner & Sons, Inc. ("Warner") to dismiss Plaintiffs' claims against it pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 21.)  The Plaintiffs, Leonard Mancinone and Kathleen Mancinone, filed their complaint dated December 16, 2019 against Warner and Defendant Allstate Insurance Company ("Allstate") in the Superior Court, asserting claims in connection with the alleged collapse of floor trusses in their home, which Allstate timely removed to this Court.[1]  (Notice of Removal, ECF No. 1.) Allstate asserts that jurisdiction is proper on the basis of diversity pursuant to 28 U.S.C. § 1332.

---

[1] As explained in Allstate's Notice of Removal, this is the second action that Plaintiffs brought against Allstate and Warner in connection with the alleged damages to their home caused by the collapse of the floor trusses.  The first case was also filed in the Superior Court and timely removed to this Court.  *See* Notice of Removal, *Mancinone et al v. Allstate Insurance Company et al*, No. 3:19-cv-01394-KAD (ECF No. 1) (D. Conn. Sept. 6, 2019).  After Plaintiffs moved to remand and Warner moved to dismiss in that action, Plaintiffs voluntarily dismissed the case without prejudice in order to plead a products liability claim against Warner in place of the negligence theory on which their original claim against Warner was based.  *See* Notice of Voluntary Dismissal, *Mancinone et al v. Allstate Insurance Company et al*, No. 3:19-cv-01394-KAD (ECF No. 35) (D. Conn. Nov. 27, 2019).

1

Plaintiffs are domiciled in Connecticut and Allstate is an Illinois corporation with its principal place of business in Illinois.  (*Id.* ¶ 9; Stip. of Pls.' Citizenship, ECF No. 12.)  While Warner is a Connecticut corporation whose presence would normally destroy diversity jurisdiction (Notice of Removal ¶ 10),[2] Allstate asserts that this Court should disregard Warner's citizenship under the doctrine of fraudulent joinder because there is no possibility that Plaintiffs can state a viable claim against Warner.  Allstate alternatively argues that Plaintiffs' claims against Allstate and Warner do not arise out of the same transaction or occurrence and are thus improperly joined, warranting severance and remand of only those claims asserted against Warner.  Warner has moved to dismiss on the basis of Plaintiffs' purported failure to state a viable claim, while Plaintiffs argue that Warner's motion turns on factual questions that are improper for resolution at this stage and that this action should proceed in the Superior Court.  For the reasons that follow, Plaintiffs' motion to remand is GRANTED in part and DENIED in part and Warner's motion to dismiss is DENIED as moot.

**Allegations**

This action arises out of the alleged collapse of a portion of the Plaintiffs' home located at 15 Old New England Road in Wolcott, Connecticut.  Plaintiffs allege that Warner constructed Plaintiffs' home in 1993 as part of a large subdivision that it developed and that it used deficient construction techniques and/or designs in the floor framing, leading to the collapse of the floor trusses on December 28, 2018. (Compl. Counts One–Three ¶¶ 4–5, 7, ECF No. 1-1.)  Specifically, Plaintiffs allege that Warner used improperly sized, prefabricated floor trusses that were standard

---

[2] Allstate's Notice of Removal cites the Complaint's allegation that Warner "is a corporation domiciled in and registered to conduct business in the State of Connecticut," which does not answer the relevant question of where Warner is incorporated or where it maintains "its principal place of business" within the meaning of the diversity jurisdiction statute.  *See* 28 U.S.C. § 1332(c)(1).  However the parties do not dispute that Warner is a citizen of Connecticut for purposes of assessing diversity jurisdiction.

in its mass-produced homes in constructing Plaintiffs' home, even though Plaintiffs had opted for an extended floorplan that warranted floor trusses of a different size or modification. (*Id.* Count Four ¶¶ 8–9, 12.) Plaintiffs assert a products liability claim against Warner pursuant to the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. §§ 52-572m *et seq.*, based on Warner's alleged: (1) improper choice of floor trusses and metal plates that were insufficient to sustain the home over its useful life expectancy; (2) improper and/or inadequate construction, manufacture, fabrication, formulation and/or creation of the floor trusses; (3) failure to inspect the product; and (4) deficient safety design and risk management analysis in designing and manufacturing the product. (*Id.* ¶ 15a–d.) Plaintiffs allege that "[t]he useful life expectancy of Warner's homes in this subdivision was in excess of 30 years," and that Warner is a "product seller" within the meaning of Conn. Gen. Stat. § 52-572m(a). (*Id.* ¶¶ 10, 14.) They further allege that the action is timely because it was brought within three years of December 28, 2018—which is the date that the property damage was first sustained. (*Id.* ¶ 13.)

Following the collapse of the floor trusses, a structural engineer allegedly inspected Plaintiffs' home on January 3, 2019 and determined that the property was structurally unsafe. (*Id.* Counts One–Three ¶ 8.) The engineer recommended that the floors "be temporarily shored by the addition of at least two interior walls below the completely detached embedded truss plates," and that the upper floors of the residence not be accessed and the propane supply be shut off until these remedies were undertaken. (*Id.*) Plaintiffs allegedly constructed a temporary structure in the basement to support the floor trusses and prevent further damage. (*Id.* ¶ 16.) Allstate, which provided Plaintiffs with a homeowners' insurance policy in effect at the time of the incident, allegedly sent its own engineer to inspect the property on January 29, 2019, and subsequently denied Plaintiffs' claim tendered in connection with the damage to their home based on the

engineer's determination that "the loss was not sudden or accidental."  (*Id*. ¶¶ 6, 9–10, 28.) According to Plaintiffs, Allstate maintains that this was "not an 'entire collapse of a covered building structure' or an 'entire collapse of part [of] a covered building structure'" so as to trigger its coverage obligations.  (*Id*. ¶ 24.)  Plaintiffs claim that Allstate's position is untenable because Plaintiffs would have suffered an "entire collapse" if they had failed to mitigate their damages, which would have violated the terms of their insurance policy.  (*Id*. ¶ 25.)  Based on these allegations, Plaintiffs assert claims against Allstate for breach of the insurance contract, breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq*.

**Standard of Review**

The federal removal statute permits a civil defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  "Congress has given the federal district courts original jurisdiction over civil actions between 'citizens of different States' where, as here, the amount in controversy exceeds $75,000."  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (quoting 28 U.S.C. § 1332(a)).  "The citizenship requirement for diversity jurisdiction has been interpreted to mean complete diversity so that each plaintiff's citizenship must be different from the citizenship of each defendant." *Id*.  An action that is removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

"On a motion to remand, the court construes all factual allegations in favor of the party seeking the remand." *Wise v. Lincoln Logs, Ltd.*, 889 F. Supp. 549, 551 (D. Conn. 1995). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d 22, 26 (D. Conn. 2015) (quoting *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013)).

**Discussion**

**Fraudulent Joinder**

"[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998). Accordingly, the doctrine of "fraudulent joinder" provides that if an action is brought against both diverse and non-diverse defendants, the defendants may "invoke the federal court's diversity jurisdiction by contending that the non-diverse defendant or defendants were not properly joined as defendants in state court." *Wise*, 889 F. Supp. at 551.

"Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Briarpatch Ltd.*, 373 F.3d at 302 (citing *Pampillonia*, 138 F.3d at 461).[3] "Put another way, 'joinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged.'" *Mihok*, 119 F. Supp. 3d at 34

---

[3] "[W]here, as here, the defendant at issue is both non-diverse and a forum resident, the doctrine also permits the Court to overlook the 'forum defendant rule' of 28 U.S.C. § 1441(b) when fraudulent joinder has been demonstrated." *Kenneson v. Johnson & Johnson, Inc.*, No. 3:14-CV-01184 (MPS), 2015 WL 1867768, at *2 n.1 (D. Conn. Apr. 23, 2015).

(quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001)); *see also Soto v. Bushmaster Firearms Int'l, LLC.*, 139 F. Supp. 3d 560, 562 (D. Conn. 2015) (describing fraudulent joinder as applying "when it is objectively reasonable to infer that the plaintiff has engaged in a form of litigation abuse"). "The defendant bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." *Briarpatch Ltd.*, 373 F.3d at 302. "The fraudulent joinder standard is strictly applied . . . [e]ven allegations that are general and at times in barebones language may be sufficient to defeat a claim of fraudulent joinder," and a defendant cannot carry its burden merely by asserting "that the complaint fails to state a claim against a non-diverse defendant." *Mihok*, 119 F. Supp. 3d at 34–35 (quotation marks, citations, and alterations omitted).[4]

### *Whether Warner is a "Product Seller" Under the CPLA*

Allstate first asserts that Warner is not a "product seller" within the meaning of the CPLA and cannot therefore be liable under the Act. The CPLA defines a "product liability claim" as "includ[ing] all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen. Stat. § 52-572m(b). To prevail on a product liability claim in Connecticut the plaintiff must establish that: "(1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the

---

[4] While courts in this Circuit do not always apply the "no possibility" standard literally and some have instead asked whether there is "no reasonable basis" for anticipating liability, *see Oliva v. Bristol–Myers Squibb Co.*, No. 3:05-CV-00486 (JCH), 2005 WL 3455121, at *2 (D. Conn. Dec. 16, 2005) (discussing variations); *see also Mihok*, 119 F. Supp. 3d at 34 n.7, even this seemingly more lenient inquiry requires proof "by clear and convincing evidence" and thus the standard remains "a high one" in either case. *Oliva*, 2005 WL 2005 WL 3455121, at *2.; *cf. Soto*, 139 F. Supp. 3d at 563 n.6 ("While courts in this Circuit have applied varying formulations of the standard for fraudulent joinder, . . . analysis of the cases shows that, in substance, the courts are applying the 'no possibility' standard set forth in *Pampillonia, see* 138 F.3d at 461, which is the standard applied here.") (citing *Oliva*, 2005 WL 3455121). As discussed *infra*, the Court would decline to find fraudulent joinder under either formulation of the standard.

injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *Bifolck v. Philip Morris, Inc.*, 324 Conn. 402, 434, 152 A.3d 1183 (2016) (quotation marks and citations omitted).  As relevant here, the CPLA defines "product seller" as "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption."  Conn. Gen. Stat. § 52-572m(a).  "Whether a defendant is a 'product seller' is a question of law for the court to decide."  *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 272, 278 (D. Conn. 2004) (quoting *Stanko v. Bader*, No. CV-030193669, 2003 WL 22413476, at *2 (Conn. Super. Ct. Oct. 7, 2003)).

The Connecticut Supreme Court has observed that "[o]nce a particular transaction is labeled a 'service,' as opposed to a 'sale' of a 'product,' it is outside the purview of our product liability statute."  *Zichichi v. Middlesex Mem'l Hosp.*, 204 Conn. 399, 403, 528 A.2d 805 (1987).  Relying on this distinction, Allstate argues that there is no possibility that Plaintiffs can hold Warner liable as a product seller because Warner is a general contractor that furnished services to Plaintiffs, specifically, the building of their home.  The Connecticut Supreme Court has not addressed the specific issue of whether or under what circumstances a building contractor might be considered a product seller under the CPLA.  It has, however, observed that the CPLA "is based on the Draft Uniform Product Liability Law [Draft Act] . . . which was proposed by the United States Department of Commerce."  *Vitanza v. Upjohn Co.*, 257 Conn. 365, 386–87, 778 A.2d 829 (2001) (citing 44 Fed. Reg. 2996 (1979)).  The definition of "product seller" in the CPLA mirrors that embodied in the commentary to Section 102(1) of the Draft Act.  *See, e.g.*, *Pendleton v. Abel Womack, Inc.*, No. 12-CV-258 (AWT), 2014 WL 12575822, at *1 (D. Conn. Feb. 18, 2014).

As a result, the Connecticut Appellate Court has turned to the Federal Register's commentary to Section 102(1) for guidance in defining "product seller" under the CPLA. *See Truglio v. Hayes Const. Co.*, 66 Conn. App. 681, 684–85, 785 A.2d 1153 (App. Ct. 2001). The commentary provides that the Draft Act "does not address the problem of the product seller engaged in a service" but "suggest[s] that a party be considered a product seller where a sale of a product is a principal part of the transaction and where the essence of the relationship between the buyer and seller is *not* the furnishing of professional skill or services." *Id.* at 685 (quoting 44 Fed. Reg. 3003). The Appellate Court thus concluded that where the plaintiffs' product liability claim was based on the defendant having constructed a defective sidewalk, "[t]he essence of the relationship between the defendant and the buyer was the furnishing of a service, not the sale of a product, because the sidewalk was composed of concrete that was transported in liquid form to the site and then used by the defendant to pour the sidewalk." *Id.*

Plaintiffs rely upon a subsequent paragraph in the commentary to Section 102(1) of the Draft Act which observes that "the Act does not address the potential product liability problems of the seller of real property," but "suggest[s] that it is only appropriate to apply product liability standards to builder-vendors who engage in the mass production and sale of homes." 44 Fed. Reg. 3003.[5] In light of this, Plaintiffs argue that the Connecticut legislature drafted the CPLA mindful of this commentary and with the intent that the statute encompass builders as product sellers. They cite an article describing the January 1978 collapse of the Hartford Civic Center roof (Pls.' Ex. C, ECF No. 20-3) and testimony before the General Assembly Judiciary Committee during a public hearing in March 1979 (Tr. at 568–69, Pls.' Ex. D, ECF No. 20-4) as well as debate in the House

---

[5] Here, Plaintiffs expressly allege that their "home was built as part of a mass production of standardized dwellings in which few options were available to buyers" and further allege that their "home was sold as a complete dwelling, including a limited selection of appliances which Plaintiffs chose from a list provided by Warner that Warner then installed in the home as part of the construction." (Compl. Count Four ¶¶ 6–7.)

of Representatives in May 1979 (Tr. at 7287, Pls.' Ex. E, ECF No. 20-5) on the pending product liability bill suggesting the legislature had considered the Civic Center roof collapse in crafting the statute of repose for the new product liability law.  Plaintiffs thus argue that the legislative history demonstrates "clear intent for this statute to apply in a situation where a building's roof collapsed due to improper construction" (Pls.' Mem. at 9)—and, by extension, where a floor collapsed due to defective floor trusses.

In response, Allstate argues that resort to the legislative history of the CPLA is improper in the absence of a statutory ambiguity and instead relies upon various Superior Court cases that have held that contractors are not product sellers.  *See Merrimack Mut. Fire Ins. v. Paradis*, No. 075007262, 2009 WL 3086589, at *4 (Conn. Super. Ct. Sept. 2, 2009) (concluding that defendant that "was a contractor in the business of replacing windows and roofs" was not a product seller); *Klein v. Phelps*, No. HHBCV075003719S, 2007 WL 2428946, at *4–*5 (Conn. Super. Ct. July 19, 2007) (holding that contract that called for renovation of the plaintiff's kitchen was one for services and accordingly fell outside of the product liability statute); *Tofolowsky v. Bilow*, No. CV9763795S, 2001 WL 357585, at *2 (Conn. Super. Ct. Mar. 20, 2001) (determining that general contractor who oversaw construction of plaintiffs' house "cannot be regarded as being in the business of purveying concrete" in suit arising from deteriorating foundation); *Lang v. Brom Builders, Inc.*, No. CV 950369766S, 1998 WL 57788, at *6–*7 (Conn. Super. Ct. Feb. 3, 1998) (holding that general contractor who "was in the business of constructing homes" was not a product seller under the statute and reaching same conclusion with respect to subcontractors who installed allegedly defective prefabricated metal chimney in plaintiffs' home); *Gilbane Bldg. Co. v. Stamford Towers Ltd. P'ship*, No. CV910118788S, 1996 WL 680077, at *13 (Conn. Super. Ct. Nov. 18, 1996) (holding that contractor who oversaw development of commercial properties was

not a product seller under the statute). While the Court takes no issue with the outcome in any of these cases, they do not carry the day as none of them involved the specific situation of builders who sell and produce homes on a mass scale.

Given that the CPLA does not define "product" and the statute defines "product seller" by reference to one who sells "products," *see* Conn. Gen. Stat. § 52-572m(a), the Court agrees with Plaintiffs that the statute is ambiguous and accordingly warrants consideration of extrinsic evidence to ascertain its meaning, *see, e.g.*, *Fruin v. Colonnade One at Old Greenwich Ltd. P'ship*, 237 Conn. 123, 130, 676 A.2d 369 (1996) ("Any latent ambiguity in the statutory language itself is normally resolved by turning for guidance to the legislative history and the purpose the statute is to serve."). Because "builder-vendors who engage in the mass production and sale of homes" are contemplated as falling within the definition of "product sellers" per the commentary to Section 102(1) of the Draft Act, s*ee* 44 Fed. Reg. 3003, and the CPLA is modeled on the Draft Act, *see Vitanza*, 257 Conn. at 386–87, it is at least possible that the Connecticut Supreme Court, which has not weighed in on this issue, will agree that the Connecticut legislature intended that the CPLA would encompass such builder-vendors as within its scope. Accordingly, the Court is unable to conclude that Allstate has met its onerous burden of proving by clear and convincing evidence that there is "no possibility" or "no reasonable basis" for finding that this outcome will obtain. *See Soto*, 139 F. Supp. 3d at 565 ("That plaintiffs may face an uphill battle in litigating their claims does not resolve the question presented here: whether the claims are clearly precluded as a matter of law."); *see also Kenneson*, 2015 WL 1867768, at *7 (holding that defendants did not sustain burden of proving fraudulent joinder when "[t]he Court cannot conclude, based on the parties' submissions, that [plaintiffs'] claim is impossible under Connecticut law."). The Court must

therefore next address Allstate's alternative argument that Warner is fraudulently joined because Plaintiffs' claim against it is clearly untimely.

### *Whether Plaintiffs' Claim is Untimely*

The CPLA's statute of limitations provides in relevant part:

> No product liability claim, as defined in section 52-572m, shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered, except that, subject to the provisions of subsections (c), (d) and (e) of this section, no such action may be brought against any party . . . later than ten years from the date that the party last parted with possession or control of the product.

Conn. Gen. Stat. § 52-577a(a). However, the statute also contains an exception which provides that "[t]he ten-year limitation provided for in subsection (a) . . . shall not apply to any product liability claim brought by a claimant who can prove that the harm occurred during the useful safe life of the product." *Id*. § 52-577a(c).

> In determining whether a product's useful safe life has expired, the trier of fact may consider among other factors: (1) The effect on the product of wear and tear or deterioration from natural causes; (2) the effect of climatic and other local conditions in which the product was used; (3) the policy of the user and similar users as to repairs, renewals and replacements; (4) representations, instructions and warnings made by the product seller about the useful safe life of the product; and (5) any modification or alteration of the product by a user or third party.

*Id*. While Allstate asserts that it is the trusses and metal connection plates and not the home that is the "product" for purposes of this analysis, Plaintiffs emphasize that it is their home that they contend to be the defective product. They allege that "[t]he useful life expectancy of Warner's homes in this subdivision was in excess of 30 years," (Compl. Count Four ¶ 10) and accordingly argue that the ten-year statute of repose does not apply.

Neither party has cited any case law interpreting the CPLA's "useful safe life" exception. While the Connecticut Supreme Court has not defined the term, "the Connecticut Appellate Court has used the phrase interchangeably with 'normal life expectancy.'" *Hubbard-Hall, Inc. v.*

*Monsanto Co.*, 98 F. Supp. 3d 480, 484 (D. Conn. 2015) (quoting *Moran v. E. Equip. Sales, Inc.*, 76 Conn. App. 137, 143, 818 A.2d 848 (App. Ct. 2003)).  Similarly, "the Model Uniform Products Liability Act, . . . provides that the 'useful safe life' of a product 'begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe manner.'"  *Id*. (quoting Section 110(A)).

Because, as the statute indicates, "[t]he duration of a product's useful safe life is a question of fact," *id.* at 483, and because whether a reasonable factfinder could find that the "product"—whether defined as the floor trusses or as Plaintiffs' home itself—was within its normal life expectancy is an issue unfit for resolution at this stage, Allstate cannot meet its burden of demonstrating that there is no possibility or no reasonable basis for finding that Plaintiffs' claim is timely.  Accordingly, the Court declines to ignore the citizenship of Warner so as to find diversity jurisdiction on the basis of fraudulent joinder.

**Fraudulent Misjoinder**

Allstate's Notice of Removal also cites the doctrine of fraudulent misjoinder, which is invoked at least implicitly in its opposition to Plaintiffs' motion to remand.  The doctrine "was first articulated by the Court of Appeals for the Eleventh Circuit, which explained that 'misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.'"  *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-CV-7153 (ER), 2015 WL 4508739, at *6 (S.D.N.Y. July 24, 2015) (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).  "While the Second Circuit has not yet addressed the concept of fraudulent misjoinder, it has been applied by at least one district court in this Circuit."  *Id*. (citing *In re Rezulin Products Liability Litig.*, 168 F. Supp. 2d 136, 144–48

(S.D.N.Y. 2001)). "Other courts in this Circuit have implicitly embraced the concept, observing that fraudulent misjoinder may be found when 'a plaintiff purposefully attempts to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard.'" *Id.* (quoting *Sons of the Revolution in New York, Inc. v. Travelers Indem. Co. of Am.*, No. 14-CV-03303 (LGS), 2014 WL 7004033, at *3 (S.D.N.Y. Dec. 11, 2014)). When evaluating fraudulent misjoinder courts typically look to state instead of federal joinder rules. *See id.*; *see also In re Fosamax Prod. Liab. Litig.*, No. 1:06-MD-1789 (JFK), 2008 WL 2940560, at *4 (S.D.N.Y. July 29, 2008) ("[B]ecause this inquiry looks to whether the non-diverse party was misjoined in state court before removal, the majority of cases have held that state rather than federal joinder rules apply").[6]

Connecticut law permits a plaintiff to bring several causes of action in the same complaint where, *inter alia*, the "claims, whether in contract or tort or both, aris[e] out of the same transaction or transactions connected with the same subject of action" and "[t]he several causes of action . . . affect all the parties to the action . . . ." Conn. Gen. Stat. § 52-97; Conn. Practice Book § 10-21 (same). The standard does not markedly differ from that reflected in Rule 20, which permits

---

[6] Allstate's motion might additionally be construed as requesting a severance of Plaintiffs' claims under Fed. R. Civ. P. 21, which "allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)." *Kips Bay*, 2015 WL 4508739, at *4 (quoting *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (*per curiam*)). "However, 'courts in this Circuit have declined to apply Rule 21 in removed cases where dismissal of the non-diverse defendants pursuant to Rule 21 to establish complete diversity of citizenship would result in duplicative, wasteful litigation in federal and state courts that could result in conflicting rulings.'" *Id.* (quoting *Sons of the Revolution*, 2014 WL 7004033, at *3) (internal quotation marks omitted). These decisions have also expressed reticence at circumventing the removal statute's strictures to broaden the reach of federal diversity jurisdiction. *See id.*; *see also Sons of the Revolution*, 2014 WL 7004033, at *2 ("While Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent") (quotation marks and citation omitted); *accord Labrecque v. Johnson & Johnson*, No. 3:15-CV-1141 (RNC), 2015 WL 5824724, at *2 (D. Conn. Oct. 2, 2015) (declining to create subject matter jurisdiction by severing non-diverse parties, citing the "unique jurisdictional concerns" presented in the context of cases removed to federal court). In light of these well-founded reservations, the Court confines its analysis strictly to the question of whether Plaintiffs' claims are fraudulently misjoined under Connecticut law.

defendants to be joined in one action "if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Allstate argues that Plaintiffs' claims do not meet either standard because they arise out of two separate transactions—the alleged defective construction of Plaintiffs' home in 1993, and Allstate's alleged breach of the homeowner's insurance policy over 25 years later.  Allstate relies upon, *inter alia*, two Superior Court cases that reached a similar conclusion in applying Connecticut law.  *See Caputo v. Brainard N. Assocs., LLC*, No. HHDCV186092061S, 2019 WL 3248546, at *6 (Conn. Super. Ct. June 7, 2019) (holding that negligence claim against property owner was misjoined with breach of contract claim against property insurer in premises liability action, as the contractual claim "bears no more than a tangential relationship to the underlying negligence claim" and "the claims against the defendants are based on two entirely separate breaches of duty"); *Delavega v. Eleftheriou*, No. CV950145179, 1996 WL 33890, at *2 (Conn. Super. Ct. Jan. 9, 1996) (holding that negligence and recklessness claims against alleged tortfeasor and breach of contract claims against tortfeasor's automobile insurer were improperly joined in same action).

In response, Plaintiffs assert that both their claims against Allstate and their claims against Warner center on the common issue of whether the collapse of Plaintiffs' home was caused by "defective methods or materials used in construction" as that is defined in the homeowner's policy. (*See* Compl. Counts One–Three ¶¶ 19–20.)  They thus argue that both sets of claims stem from the same transaction or occurrence and center on common legal and factual questions.  They further argue that judicial economy is served by retaining both Warner and Allstate in the same suit in the event that Allstate pursues its subrogation rights against Warner as Plaintiffs' insurer.

The Court disagrees with Plaintiffs. Although Plaintiffs include allegations as to the cause of the collapse, Plaintiffs' claim against Allstate is that it improperly denied coverage based on its assessment that Plaintiffs' loss was "not an 'entire collapse of a covered building structure' or an 'entire collapse of part of a covered building structure'" within the meaning of the policy. (*Id*. ¶ 24.) Plaintiffs further allege that Allstate failed to follow appropriate protocols in investigating and reviewing the Plaintiffs' claim and knowingly acted to deprive Plaintiffs of their insurance benefits. (*See id*. ¶¶ 28–30.) The purported cause of the collapse, originating from events occurring in 1993, therefore has no bearing on Allstate's alleged improper denial of coverage in 2019. Whether Allstate breached the insurance contract will turn on an entirely different set of factual and legal questions than whether or not Warner sold Plaintiffs a defective "product" that caused the Plaintiffs' loss, assuming *arguendo* that Plaintiffs can establish that Warner is a "product seller" under the CPLA.[7]

Because Plaintiffs' claims against Allstate and Warner so clearly arise from two separate series of transactions, occurring more than twenty-five years apart, the Court concludes that the Defendants have been fraudulently misjoined. While the Court is aware that some courts have additionally required a showing of "egregiousness" before reaching such a conclusion, *see, e.g.*, *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-CV-2049 (JG) (VVP), 2013 WL 3729570, at *5 (E.D.N.Y. May 17, 2013) (Report and Recommendation) (citing cases), the Court need not find that Plaintiffs acted in bad faith in order to conclude that a severance and partial remand is appropriate. Here, the Court's determination that Plaintiffs' claims do not satisfy the permissive

---

[7] The Court is aware of cases in which the permissive joinder standards under state law were found to have been met in circumstances arguably similar to those presented here. *See Kips Bay*, 2015 WL 4508739, at *7; *Sons of the Revolution*, 2014 WL 7004033, at *4. These cases are readily distinguishable, and in the Court's view, were correctly decided, because in both cases the coverage claims against the insurer and the tort claims against the allegedly misjoined tortfeasor arose from and required determination of a common question of fact – the cause of the plaintiffs' losses. As discussed above, the Plaintiffs' coverage dispute with Allstate does not turn on the cause of the collapse, but rather the scope and nature of the collapse.

joinder standard under the Connecticut Practice Book provides a sufficient basis for severing and remanding the claim against Warner while retaining jurisdiction over Plaintiffs' claims against Allstate.

**Conclusion**

For the foregoing reasons, Plaintiffs' motion to remand is GRANTED in part. The claim against Warner is severed from the claims against Allstate and remanded to the Superior Court. The motion to remand is DENIED as to the claims against Allstate. Warner's motion to dismiss is DENIED as moot. The Clerk of Court is directed to remand the claim against Warner to the Superior Court for the Judicial District of Waterbury.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of September 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE